Number 203551 Uzoegwu v. Garland You can correct my pronunciation Ms. Yun, whenever you're ready May it please the court. My name is Yeo Eun-yoon. My colleague, Oongi Park, and I are law students appearing under the supervision of Alina Das, pro bono counsel for the petitioner, Elisa Uzoegwu. The main question in this case is whether the Board of Immigration Appeals committed legal error by miscasting the appeal filing deadline and the place of filing rule as jurisdictional. Before we get into the merits of the argument, I have a couple of questions about what subsequently happened after the BIA's decision in this case and what is the current status of the case. As I understand it, the petitioner filed a motion to reopen before the immigration judge, which was granted in April of 2021. Is that correct? Your Honor, we did file a motion to reopen with the immigration judge. He actually denied the motion, so we have appealed it to the Board of Immigration. Now this is very interesting to me because we don't have access in any computerized way to what occurs in these proceedings. All I could find on a website of the was a statement that the motion to reopen was granted in April and then further proceedings took place and then another decision was issued by the immigration judge in June of 2021, and the website says that there's no appeal pending. Now that could be wrong. It's just a website. I don't know what they're up to and what they're telling us. I'd like to know if you know what actually happened. Now to get back to the motion to reopen, I thought that the premise of the reopening, as opposed to reconsidering the equitable tolling issue, that the premise of the motion to reopen was a new claim that the petitioner was entitled to asylum because of potential persecution by reason of mental illness as opposed to religion and ethnicity, which had been previously argued. My assumption from what it said in the website about the April and June orders was, one, that motion was granted so that he was able to present that issue, and then something happened in June, which I have to assume was an adverse decision because I assume we wouldn't be here if he'd been granted asylum on some other ground. Is that your understanding of what happened? Your Honor, so we did file a motion to reopen with the immigration judge on October 30th of 2020, and I believe when the website says it was granted, it probably means that the immigration judge took the case to reach a decision. And then considered whether there was some basis for this new claim. Is that the point? Yes, Your Honor. Okay, so if there was a motion to reopen that was filed with the IJ after the BIA said you should direct it to the IJ, and now you're appealing that denial, does that mean the issue of the motion to reopen in this case is moot because you actually got to file the motion to reopen and now you have a separate appeal that's considering that question? Your Honor, the case before this court is not moot, including the motion to reopen portion because when we filed the motion to reopen with the BIA, we filed it as a supplement to the motion to reconsider as well as a motion to reopen. And the reason we did that was because the information contained within were relevant to explanations of Mr. Ozegu's untimeliness in filing this appeal. Well, but a reopening is different than a reconsideration. Isn't the reopening part of the motion at least moot because you got the reopening and that petition was then considered. That may have been considered wrongly. Maybe the answer that the immigration judge reached was incorrect. Maybe it's going to be reversed by the BIA and if not that by us later on, but the case was reopened. So that part at least is done, right? Because if they had granted the motion to reopen, are you saying that then the Board of Immigration Appeals would have considered the mental illness claim they would have to remand to the immigration judge and then the immigration judge would consider that issue and that's exactly what already happened, no? Your Honor, even though the immigration judge considered the motion to open, that portion is not moot because the issues that we provided through the supplemental brief which contains the motion to reopen contains information that is not clearly severable in terms of what goes to the motion to reconsider. But those are two separate issues, the reconsideration and the reopening. So even if maybe there's something in your filing that's relevant to thinking about the reconsideration question, why would that prevent the reopening question from being moot? Your Honor, that doesn't change the fact that the BIA still has not assumed jurisdiction over that supplemental motion which correctly and timely supplements the motion to reconsider. For instance, if- Okay, so since we said that it's both a motion to reopen and also a supplement of the motion to reconsider, wouldn't it be appropriate to consider it even so far as it's about the motion to reconsider but not the motion to reopen? Would that be an appropriate thing for us to do? Your Honor, this court cannot determine whether that would be appropriate because the BIA, in failing to consider the motion to reopen, the supplemental motion said that they cannot consider it because they never assumed jurisdiction over Mr. Segre's case. I'm not sure they said they cannot consider it as opposed to they would not consider it. But the point is, that relief happened. The reopening happened. So I'm not sure I understand how you could still be appealing the denial of reopening. But that's a separate question. I still want to get back to something else. What is the effect of reopening the case on the pending order of removal? In other words, if there is a reopening of the matter by the immigration judge, is it the case that the existing removal order is still in place, such that the petitioner was subject and has been subject all this time to being simply removed on the existing order, notwithstanding that the immigration judge has reopened the case for the purpose of considering another claim of entitlement to asylum? Your Honor, since the immigration judge denied our motion to reopen, the removal order is still in place. But that's what I'm trying to figure out. When the immigration judge reopens in April, does that have any effect, any vacatur effect, on the existing order of removal? Because if the proceeding is now reopened and we're still considering now whether he should be removed, how is that consistent with the existence of a removal order? And I'm not purporting to make some ruling or even suggestion. I'm just trying to understand what is the legal impact of a reopening. If the Board of Immigration Appeals had said, no, we still think your thing was untimely, but you've got something new now, so we're going to allow it to be reopened and we remand to the immigration judge to consider it, does that do anything to the existing removal order? Your Honor, so if the immigration judge grants the motion to reopen in the sense that they open the case and they decide that Mr. Osegu warrants a relief, then the underlying removal order would disappear. But I also want to point out that the website that you have referred to is incorrect in that the motion to reopen was not reopened by the immigration judge. So just to clarify, you've told us that the immigration judge did consider the motion to reopen but then denied it, so the case has not been reopened. So then there's no reason to think that the order of removal is not still final because the case is final, right? Yes, Your Honor. But I guess just to answer Judge Lynch's question, if the IJ had granted the motion to reopen, then it means the proceedings would be open and probably the order of removal would not be final because they would have reopened the case, right? Yes, I believe so. But that has not happened, and so therefore the order of removal remains final. Yes. Well, do we actually know that? With all respect, wouldn't it be appropriate for you to let us know what's going on in the case? I mean, there was no 28J letter or any indication that anything at all had happened other than my staff followed up on this because the Board of Immigration Appeals had said, why don't you go and file a motion with the immigration judge? And I think there was some indication in the brief that that had been done, and we were trying to figure out what happened. So maybe if you could provide the decisions of the immigration judge, whatever was done in April, if anything, and whatever was done in June, furthermore, and the notice of appeal that was then filed with the Board of Immigration Appeals because these are matters of which I should think we could take judicial notice because they are proceedings of an immigration court. But unlike proceedings of a federal district court, we can't access any of that unless the party's provided to us. Your Honor, apologies if that led to confusion, but the reason that we did not file a 28J letter and the reason we're before this court today because whatever happened subsequent to this petition for review doesn't change the fact that the Board of Immigration Appeals committed legal errors. That may be right. But you see, my point is, if there was a reopening, even a sort of technical reopening of the case, I'm a little puzzled about whether the pending order of removal does remain in effect. And, you know, certainly the way I would think about this, if it were a district court, if there was a motion to do something new to the case and the judgment was reopened and then the same judgment is reimposed, then there would be an appeal lying to this court from that new order. But the earlier appeal that had been filed might have become moot because the judgment was vacated by the district court. Now, I'm not suggesting that that is either A, what the immigration judge did, or B, what the legal effect of that is. But I'm not sure that I can rely exclusively on your representation to say none of that matters. I'd like to at least see what the immigration court actually did. How about a letter, one week, three pages, and whatever attachments? Yes, Your Honor. We could definitely send him that. Sorry to have taken up so much time with this. We're just trying to understand what the procedural posture of this case actually is. Okay, so we'll think about that with the supplemental letter. But can I go back to the argument you were initially going to make, which is about treating the 30-day deadline as jurisdictional? I'm a little puzzled why everybody is getting into these debates about whether it's jurisdictional or not jurisdictional because even if it's not jurisdictional, why can't it just be a mandatory rule that the BIA follows? In fact, the BIA is not an Article III court, right? So the Supreme Court has told us that executive agencies, we shouldn't get hung up on the idea that something is jurisdictional and something is not jurisdictional because the question is always whether the agency is acting in accordance with the authorizing statute. So if the agency says it has a mandatory rule that says you can file within 30 days, it can enforce that rule, can't it? Your Honor, as to your question on why it matters that the BIA treated this as jurisdictional, the Supreme Court actually just last term ruled on four cases that concerned a rule that it found that was incorrectly interpreted as jurisdictional rules, and in so doing, they emphasized the difference between treating a rule as jurisdictional. Yeah, but that's for courts, right? That's not for executive agencies, right? In the city of Arlington, the Supreme Court said there really isn't a distinction between jurisdiction and non-jurisdiction for executive agencies, right? I don't believe there's distinction between whether jurisdictional and non-jurisdictional rules differ in terms of agencies and courts, and this court has actually held in ADEPO that it was erroneous for the BIA to treat the appeal filing deadline as a jurisdictional rule. So in ADEPO, we said that the BIA needs to consider a— the BIA must consider the principles of equitable tolling when an untimely appeal is filed and the petitioner raises the issue, right? That's what we said in ADEPO. But here, in his notice of appeal, your client didn't raise—didn't ask for equitable tolling, right? So how could it be an error by the BIA not to consider equitable tolling if it was never raised by the petitioner? Your Honor, so first, Mr. Rosego does raise equitable tolling in his appeal. He doesn't— In the motion for reconsideration, he did, but in his act— saying that the BIA erred in not doing it in the first place, but in his notice of appeal to the BIA, he did not raise the question, right? I disagree, Your Honor. First, the BIA allows respondents to raise equitable tolling for the first time through a motion to reconsider. That has been provided through a matter of Lopez, and that was the procedural circumstance for a matter of Morales-Morales. In those instances, the respondent had raised equitable tolling for the first time in the motion to reconsider, but BIA both considered those claims because in Lopez, they said they would assume jurisdiction over motions to reconsider to the extent that it challenges the board's findings of untimeliness or provides explanations for untimeliness. So first— So even if he did, even if we do consider it that way, would this be futile? There's no explanation given for extraordinary circumstances or the diligence was exercised in trying to get the paperwork. Regarding the government's futility argument, Your Honor, first of all, the BIA itself never actually uses the word diligence or extraordinary circumstances anywhere in its decision to deny Mr. Osega's appeal. All it says is that he didn't warrant, or his circumstances weren't not exceptional enough. But this court has provided, as well as— Wait. It says there's no error in our previous determination that the respondent did not demonstrate exceptional circumstances. Precisely, Your Honor. So exceptional circumstances are different from extraordinary circumstances, which is one of the elements— Really? This is the question I wanted to ask. Can you explain to me exactly what the difference is between the BIA's consideration of whether it should, as a matter of discretion, have this— it seems odd to me to call it this, but they call it this— self-certification to overlook the untimeliness. And that's a matter of exceptional circumstances, and the equitable tolling standard is extraordinary circumstances, right? Yes, Your Honor. I'm having a little trouble remembering which is which because I can't tell the difference. And I'm wondering if you can tell me why the standard of extraordinary circumstances is more advantageous and, if considered, could lead to one result, while the standard of exceptional circumstances would not. Your Honor, extraordinary circumstances can lead to more advantageous outcomes because it is based on the principle of equity. And this Court and Supreme Court has held that equitable tolling should not be mechanically applied and should be determined on a case-by-case basis. As a matter of discretionary doctrine. It is not a discretionary determination because this Court has laid out the standards of what constitutes or what could be considered for extraordinary circumstances and what could be considered for due diligence. On the other hand, this Court in Vela Estrada has said that for exceptional circumstances, there is no meaningful standard or guidance, and therefore the BIA's determination on self-certification is precluded from judicial review. That is different from equitable tolling, where this Court has held it is subject to judicial review. The question is not whether it is subject to judicial review. The question is an agency that said, you know, the respondent didn't provide a timeline with the court clerk, explain what efforts, if any, he made up to follow up his call with the court clerk, or meet the filing deadline or explain how he was able to obtain the appellate documents, all these things that the BIA says about his diligence, and then it also says there are no exceptional circumstances here.  So the question is not whether one is subject to judicial review and one is not. The question is an agency adjudication that reached these findings seems to have already evaluated diligence in exceptional circumstances. No? No, Your Honor. This Court cannot, nor the BIA, can predict the outcome for what it would have been under extraordinary circumstances because for extraordinary circumstances, for instance, due diligence is a reasonable diligence expected under the circumstances. And there's no mention in the BIA's decision as to the fact that Mr. Rozego was detained pro se, had no access to the Internet, and was reasonably relying on the immigration judge's promise to receive the appeal papers. Well, now you're just arguing with the BIA, right? The BIA doesn't think that that vitiates his failure to follow up with the court clerk and all the other things the BIA says, right? So maybe you think the BIA was wrong that he didn't need to exercise more diligence, but the BIA thought that he wasn't diligent about pursuing his claim, right? Your Honor, I have to disagree because the BIA never uses the word diligence. All they do is they list a few things that Mr. Rozego provided and said, this doesn't warrant exceptional circumstances, which we've said is a discretionary test. Well, I mean, the BIA did evaluate. I mean, is this accurate? The BIA did evaluate what he did to meet the deadline, right? What efforts he could have put into meeting the deadline. Does that not seem like it's evaluating diligence? Your Honor, it's not an evaluation of diligence under the reasonable circumstances, but also the BIA failed to construe the supplemental information that we provided through Mr. Rozego's declaration. That was part of the supplemental motion. And there we do enumerate as to the other steps that Mr. Rozego has taken. So what you're saying is the BIA's statement about what he did not provide is clearly erroneous because he did provide explanations, at least in the supplemental motion for reconsideration and reopening, that addressed exactly the things that the BIA said he had not addressed. Precisely, Your Honor. And both the First and Fifth Circuits have said, which we provided through the 28J letter, that even in both of those cases, the BIA had said the circumstances do not warrant self-certification, but both circuits remanded the case back to the BIA to apply equitable tolling because they held that an outcome of self-certification cannot be used to predict the outcome on equitable tolling. Well, that's kind of what we did in Adipo, although it's a little hard to penetrate the underlying record and figure out how close the circumstances were in terms of what the agency had actually said in Adipo. I mean, I don't think there's an explanation of exactly what the, you know, considered these very points. But one way or the other, your point is, in Adipo and in other circuits' cases, there have been remands to look at equitable tolling, notwithstanding that the BIA had denied self-certification. Yes, Your Honor. So there must be some difference that those courts perceived, even if we're having trouble identifying exactly what that difference is. Yes, Your Honor. We are aware that upon remand, Mr. Adipo, the BIA did find that he met equitable tolling in light of his detained and pro se status, which comes to show that it is inquiry into the reasonable diligence under the circumstances. And there's no mention or acknowledgement by the BIA that Mr. Osegu was first promised these papers by the immigration judge. He waited, as he was told, and then he called the clerk's office because the papers weren't arriving. They also told him to keep waiting, but he knew the time was ticking, so he looked to, he spoke to all the people that he could, including the law librarian, the corrections officers, and the ICE officers who came by occasionally. And eventually he got a copy of the form from some other inmate. Some other detainee, yes, Your Honor. And it comes to show that the agency repeatedly failed him. And despite these obstacles and extraordinary circumstances, Mr. Osegu did pursue his papers and did inquire eventually to people, to someone who was order removed and received the papers around that time. Thank you, Ms. Yin. Thank you. We'll hear from the government. Thank you. May it please the court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. I'll first start off by saying, I guess, what's not in front of this court. And it seems, given Petitioner's representations, that given the subsequent events before the immigration judge, that the motion to reopen is not, is moot and is not before this court. And also, Petitioner, in briefing. Well, that's what I wanted to ask. What is the government's position on that? So are you in a position to tell us what the government thinks happened in April and June of 2021? My last check of the website systems, the same system that I presume you checked, everything was still pending. So this is news to me that the motion was considered and denied, and now it's up on appeal to the board. Can we just ask you in the abstract, so if, in fact, a petitioner files a motion to reopen with the IJ, and the IJ denies it, and then there's a new appeal to the BIA, does that mean that the earlier petition for review should not be considered, or should we still consider the issues before us in this proceeding? The earlier, the current petition for review is still on the table, only, but only to the extent of the motion to reconsider. Since the, but the motion. All right, all right, so reconsider is the one that's not. But the motion to reopen is now moot because Petitioner did what he was supposed to do the whole time, went to the IJ and filed the motion. So the whole issue of the motion to reopen is moot because the relief he was seeking, he got to raise that to the IJ, and the IJ made decisions on that. Well, do you have any access to anything other than a website to find out what the heck is going on in an immigration case when you're with the Office of Immigration Litigation and the Department of Justice? I have access to the website and a hotline number. I don't have any additional information, and I don't know what the IJ's decision is because we don't get that until the board issues a decision. I don't know whether, when you last checked the website, but when we checked the website on November the 17th, it said motion to reopen IJ jurisdiction. A motion to reopen IJ jurisdiction was completed on April 23rd, 2021. It was granted, capital letters, boldface. Then underneath it, it says motion to reopen BIA jurisdiction. A motion to reopen BIA jurisdiction, that's what's before us here, on September the 30th, 2020, was denied. Then it says case appeal information. No appeal was received for this case. I'm trying to see. I thought there was something saying that. Yes, there's also something saying the immigration judge issued an administrative decision, decision date June 2nd, 2021, a decision and motion that is subsequent to the motion to reopen that was purportedly granted. Now, these folks who represent this fellow are telling me that's not correct, which it may not be. I don't know what's with this website. But it strikes me as utterly bizarre that the government's left hand has no idea what the government's right hand, not just the government, the Department of Justice, right? Isn't that where these immigration judges are located in the department? They're a part of the Department of Justice, right? That's what the EOIR is part of. You're part of it. You're not only a part of it. You're the part that deal, they're the Office of Immigration Litigation, which represents the Department of Homeland Security, I guess, in these proceedings. And you're telling me that you have no access, that when they, if they send us a letter and attach decisions of the immigration judge, that's the only way that you will have any idea what the immigration judge is doing in the very case that you are now litigating here? Yes. We only have access to the hotline and to the website. And we try to refrain from asking what's going on at the IJ level and the board level as to not interfere with their jurisdiction over the cases. We try not to interfere. I get it. But it would be interesting to know what happened, wouldn't it? Because, after all, they're saying, and they may be right. I'm not an expert in immigration law. They're saying that the reopening of the case, which, first of all, they say didn't happen, notwithstanding that the website thinks it happened, that the reopening of the case would not undermine the existing order of removal. Is that your understanding? Based upon petitioner's representations now, it seems that the IJ denied, maybe reopened and then denied on the merits or just denied reopening altogether. If there was an initial grant of the motion, then it would have, there would be no removal order? The website makes it sound as if there was a reopening and then a decision subsequently on the, which doesn't tell us what it was, on the reopened matter. Then that may have been on the merits. They're also telling us that they have no record of any appeal. When these folks are telling us that they have filed an appeal of what apparently was an adverse decision one way or another, ultimately, by the immigration judge. I'm taking petitioner's representations as true. And if there's an appeal pending, then the removal order is back on the books. And then they can petition for review after the board makes a decision in the case. But this decision that is on review here, this order of removal, is not affected in any way by a decision by the immigration judge to reopen proceedings. If the board reopened proceedings, then there would be no removal order. But it seems that whatever happened after that, it was denied on the merits or the motion reopened was denied. So there is now a removal order in place. But even though the first petition for review is effectively interlocutory because the proceedings are still ongoing, we still could consider the motion for reconsideration? Yes, the motion to reopen in the government's view is moot given subsequent events. And petitioner in briefing concedes that they're not challenging the denial of the board for certification. The only issue is the motion to reopen and whether or not the board may have erred in not considering the claim for equitable tolling. Let's talk about the equitable tolling thing. Excuse me, can I just finish? Sorry, one further one on this. There's also a pending motion, which has been pending for three years, for a stay of removal. I take it that the reason no organ of this court has acted on that is that there is a forbearance of removal. So it's really not necessary. That's correct. And where are we now with forbearance? Is there any, the government will not remove this person until we decide this case. Is that correct? Unless and until the court either denies the stay motion or however this case pans out, like the mandate issues, then the government will adhere to the forbearance policy. But it also depends on what happens subsequently because if there's another petition for review file, then we have this whole stay of removal in place again. So as of now, the government is not removing this petitioner. How does the government decide whether it is forbearing or not forbearing in a situation where at least you can't tell us what is happening in the further proceeding? In general, the government will not forbear in a case where there's clearly no jurisdiction over the petition for review. Here, this is not such one of those cases. So the government agrees not to forbear, will forbear in removal. Okay, so on the reconsideration. So the petitioner didn't raise equitable tolling in the notice of appeal to the BIA. That's our view, yes. But then the petitioner says, but that's okay because the BIA lets you raise issues for the first time in a motion for reconsideration or equitable tolling for the first time. Is that right? No, that is not correct. First of all, ADEPO and then the cases petitioner cites in the 28J letter, including Morales-Morales and James and Buck's statement all make clear, and ADEPO in particular, which predates all of this, makes clear that any claim for equitable tolling and a showing of due diligence and a showing of extraordinary or exceptional circumstances must be made on appeal with the appeal documents. Either the notice of appeal, a motion to accept a late filing, a supplement to a notice of appeal, not in any subsequently filed motion. And a motion to reconsider in particular, it's not a vehicle for raising arguments that could have been raised previously. And the equitable tolling argument should have been raised previously. Let me push back a little bit on the argument that the petitioner here never sought equitable tolling. This is a pro se person. Right. Is the principle that we follow and that the district courts follow that a filing by a pro se person should be construed to raise any legal argument that is presented fairly by the facts? Yes, the agency follows a liberal construction policy. And it sort of did that because I noticed that the BIA said in its initial order that the respondent has requested that we accept the untimely appeal by certification. He didn't do that, did he? He did not request certification. He did not request certification. He presumably has no idea that certification exists as a procedure. So they did construe it liberally to assume that when he goes on about exactly what happened, that the judge said he'd get these forms. He didn't get the forms. I called the clerk's office to inquire, and it still wasn't sent. I have no way of getting this, blah, blah, blah. And I sent it late. But in effect, he's saying consider it anyway. Why isn't that, if that can be liberally construed to raise this obscure administrative doctrine of self-certification, why can't it be equally liberally construed to raise the question of equitable tolling? Which is what he's saying. He's saying it's not fair. Maybe he's wrong. Maybe it is fair. Maybe it is in extraordinary circumstances. But isn't that what he's basically saying is appealing to their sense of equity to consider this anyway? I think the answer to that is that certification to the board, self-certification, is something they can do on their own power. They don't have to be asked to do it. They can just do it. So that's why I think they just considered the certification issue and didn't address equitable tolling because it wasn't raised. Yeah, but they didn't say that. They didn't say he hasn't asked for this and he hasn't asked for that. But we're going to consider in our own goodness of heart whether we're going to self-certify, and we think not. They construed his filing as a request. And whether they did or they didn't, why shouldn't they consider the very arguments that he made as a basis for equitable tolling? I still think the petitioner has to put the board on some kind of notice that he's asking for equitable tolling, and the petitioner did not do so here. And certification is something the board can do on its own power. What's left of the idea that we construe a pro se petitioner's, or respondent in this case as he was in the immigration proceedings, consider his filings liberally to construe whatever legal arguments, because he's not an expert lawyer, are fairly suggested by what he says. And what he's saying is, it's not fair to apply this deadline to me because look what happened. Why isn't that, why wouldn't a reasonable lawyer looking at that say, I get it. In lawyers' terms, that's about equitable tolling. Then I consider whether equitable tolling is appropriate, and maybe it isn't. I have two answers to that. First, I think there has to be something more to put the board on notice of equitable tolling. And one of the 28J cases that petitioner cites I think is instructive, and that's the First Circuit case of James. And in the James case, the government argued that petitioner did not sufficiently raise the equitable tolling argument, because it was kind of buried in a supplement to the notice of appeal, and it was a pre-printed form with one line. And the board, or the court, using a liberal construction analysis, found that the pro se detained petitioner did adequately raise the equitable tolling issue, because even though it was buried in this supplement to the notice of appeal, the petitioner still argued that pro se detained, still said that the time limit for the filing of appeal was not jurisdictional, that her appeal is late, and she deserves some independent analysis of the reasons why it's late, and she also requests that the period of the appeal be stayed. And those representations vary. This isn't buried anywhere. This is one paragraph, which is granted he could have added additional sheets and so on, but he fills the space. And about half of what he's saying is I'm pro se, and here's why I didn't get this filed in time. I see. And you're saying – There still should have been a little bit more language to put the board on notice. But even that aside, the panel mentioned this earlier. There's a futility argument, yes. I think it's clear from the board's decision on reconsideration that the board addressed the extraordinary exceptional circumstances and the due diligence argument. It's futile to send this back because the board's going to come up with the same. Okay, well, the petitioner says that the standards for self-certification are different from the standards for equitable tolling. So what about that? Honestly – That you might have extraordinary circumstances even if you don't have exceptional circumstances. I don't – I would have to look into that further, what the legal distinction is between exceptional and extraordinary, because in all the cases I've read, the terms are used interchangeably. So I don't know what the legal distinction is. But even that aside, there's sufficient findings in the board's decision to cover the due diligence issue. So futility – Because you didn't follow up with the clerk and all of that other stuff the BIA says. Yeah, there's no timeline for when – Okay, well, about that, the petitioner says, well, in the supplement, he gives an explanation for that. So what about that? Again, the post hoc justifications are not permissible. ADEPO and Morales-Morales makes clear that you have to raise due diligence, equitable tolling, and make a showing of extraordinary circumstances in the documents on appeal. He does say on the notice of appeal that never received the appeal papers, and the respondent called the clerk's office to inquire for the appeal form, and it still was not sent. So he did right here, not in the supplement, not in the obscure supplement to the supplement, not in the motion to do the motion, right here on the face of the notice. He says he called the clerk's office. Yeah, but there's no timeline for when. There's no explanation of how he got the appeal documents, when he got the appeal documents. If he says the IJ told him that he would get the documents in three to five days, did he follow up on day five, day ten, or did he wait until day 30 to follow up? We can't discern that from what's stated in the notice of appeal, and that all goes to due diligence, and that all should have been presented with the appeal documents. We don't have to decide whether he was diligent or not. We just decide whether the BIA abuses discretion in thinking that he wasn't diligent, right? Correct, correct. Okay, thank you, counsel. Thank you. We'll hear from Bob. Thank you. Your Honors, the government's arguments only underscore why this court should remand this case for the proper application of the legal standards governing Mr. Ezegui's motions. I do want to note, as was already pointed out, Mr. Ezegui does make many factual allegations about his circumstances. Specifically, when it comes to extraordinary circumstances, he talks about how he was pro se, detained, and he had promised papers from the immigration judge that never arrived. And when it comes to his due diligence, he talks about how he had preserved his appeal, had asked the IJ about the appeal papers, and even called the BIA clerk's office, which the immigration court practice manual does say the BIA clerk's office does have these kinds of forms. And yet, despite all of that, the government argues that Mr. Ezegui did not adequately raise equitable tolling factors, but he clearly did here. And in fact, especially considering the fact that he is a pro se litigant, Mr. Ezegui did not need to use the words equitable or tolling. And this court has held in Tristman that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest argument that they suggest. We say that, but we also say that even a pro se litigant needs to raise an argument, and so there needs to be something to construe. So if he doesn't say that he's seeking equitable tolling, why wasn't it reasonable for the BIA to say, well, look, you missed the deadline. You don't say anything about equitable tolling, but the way we would handle this is through self-certification. So we're going to consider your arguments for self-certification. I mean, doesn't that seem to be pretty indulgent of the petitioner already? Your Honor, I think the BIA seems to have very much acknowledged that Mr. Ezegui is requesting some kind of consideration of his appeal despite the untimeliness, and that does show that they understood what his request was. And considering his status as a pro se litigant, I definitely think that they could have gone further and at least considered equitable tolling based on the factual allegations that he had raised. And based on those— They could have gone further, but you're saying they're required to? This court has held an adipose that if equitable tolling is adequately raised, then the BIA must consider it, and the case that we've sent in, the 28J— Yeah, but the question is, are you required to interpret the filing from the petitioner as raising every possible argument for allowing a delay, or they just think the most natural inference is self-certification because that's how they would do this, and so they consider it on that basis? Your Honor, I do not believe that there is a specific requirement saying that the BIA must specifically reach equitable tolling when these factors are raised, but we are arguing that everything was reasonably raised. But to the extent that the BIA believes that it was not raised on the notice of appeal, of course, what is before this court is the motion to reconsider where it was very much explicitly raised. Mr. Eusebio specifically says the words equitable tolling, but based on the erroneous jurisdictional argument, the BIA once again failed to analyze his equitable tolling arguments, and that was plainly an error that requires a remand. Well, in adipose, isn't— The only difference between this case and adipose is that in adipose, he used the words equitable tolling apparently, and the BIA did not consider it and just considered self-certification. But we sent it back for them to consider equitable tolling, which is what you're asking for here, the only difference being that here the request for equitable tolling is, at least in the first instance, implicit and is then made explicitly in the motion to reconsider. That is correct, Your Honor. Now, the government also argues, and I understand my time is up, if I may just make this one last point, that Mr. Eusebio's points are futile because the BIA appears to have done a lot of analysis, and it's self-certification analysis, but as the First Circuit has held in James v. Garland, as well as the Fifth Circuit, self-certification does not always mean that equitable tolling was adequately considered as well, and this Court should not consider the merits of the argument and should simply remand to the BIA to listen to this Court's presidential case adipose and consider the merits in the first instance on its own. And this is a case where the agency had repeatedly failed in its own procedural requirements when it comes to Mr. Eusebio's case here. It had failed to send papers. The IJ had made various promises regarding the appeal papers and had failed to send them. Based on all these errors that the BIA had made and the IJ had made, this Court should remand the motion to reconsider and the supplemental motion for proper legal consideration in the first instance. Thank you. Thank you, Mr. Mark. Thanks to all of you. Does the government have any interest in filing anything in response to the letter that they're supposed to send us? I'm happy to. Well, I don't care. It's up to you. You want it. If you don't care, we don't care. We'll just take what they say and accept it. I'm happy to, and I'm happy to also do additional digging to see what's going on in the proceedings below. Well, maybe that would be helpful to give them a few days after. Sure. Why don't we, so one week for petitioner, and then we'll give the government another week if you'd like to submit something in response or addition to that. Yep, that would be appreciated. Okay. Thank you.